UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Key Developers Group, LLC,                    Case No. 8:08-bk-02929-MGW
                                              Chapter 11
          Debtor.
_____/

Phillip Von Kahle,
as Successor Liquidating Trustee,

          Plaintiff,

vs.                                           Adv. Pro. No.: 8:10-ap-00256-MGW

Greenacre Properties, Inc.,

          Defendant.
_____/

**MEMORANDUM OPINION ON
CROSS MOTIONS FOR SUMMARY JUDGMENT**

        Under Bankruptcy Code section 550, a bankruptcy trustee may recover the value of an

avoided transfer from the immediate transferee of the initial transferee unless the immediate

transferee proves that it took the transfer for value, in good faith, and without knowledge of its

voidability.  In this case, the Debtor, as developer of a condominium project, made a series of

avoidable transfers to the condominium association, which in turn paid the Defendant

management company for monthly management services. Under the circumstances, the Court

concludes that the Defendant management company took the transfers for value, in good faith,

and without knowledge of the voidability of the transfers. Accordingly, summary judgment will

be entered in favor of the Defendant.

<u>Procedural Background</u>

The Debtor developed The Place at Channelside ("The Place"), an urban mixed-use development project containing 244 residential condominium units, along with retail space and amenities, located in the Channelside Drive district in Tampa, Florida. During development, the Debtor created The Place at Channelside Condominium Association, Inc. (the "COA") to maintain, operate, and manage The Place upon completion. The Debtor was required to pay dues and fees and to provide shortfall funding to the COA with respect to management of The Place.

Greenacre Properties, Inc. ("Greenacre") provides property management services to condominium, townhome, and homeowners' associations. Greenacre contracted with the COA to provide management services for The Place. Under the parties' contract, the COA was required to pay Greenacre a flat fee of $11,786.25, as well as reimburse Greenacre for supplies and miscellaneous expenses, on a monthly basis.

During the ninety days before the Petition Date, the Debtor transferred a total of $60,000 to the COA's bank account to pay expenses of the COA ("Pre-Petition Transfers").[1] An additional $60,000 was debited from the Debtor's bank account and credited to the COA's bank account on March 6, 2008, the day after the Petition Date ("Post-Petition Transfer").

The COA, in turn, paid Greenacre a total of $48,112.35 from the Pre-Petition and Post-Petition Transfers for property management services as follows: $11,826.21 on January 23, 2008, in payment of the December 2007 invoice; $12,057.98 on February 11, 2008, in payment of the January 2008 invoice; $12,179.14 on March 7, 2008, in payment of the February 2008 invoice; and $12,049.02 on March 14, 2008, in payment of the March 2008 invoice.

The Liquidating Trustee brought this adversary proceeding (1) to avoid the Pre-Petition and Post-Petition Transfers under Bankruptcy Code sections 547 and 549; and (2) to recover the

---

[1] The Debtor made four separate transfers totaling $60,000 in January and February 2008.

Pre-Petition and Post-Petition Transfers from the COA (as the initial transferee) and Greenacre (as the immediate transferee from the COA) under Bankruptcy Code section 550. Specifically, Counts I and II of the Amended Complaint seek avoidance of the Pre-Petition and Post-Petition Transfers made to the COA. Counts III and IV seek recovery of the Pre-Petition and Post-Petition Transfers from the COA and Greenacre, respectively.

The COA failed to respond to the Amended Complaint, and as a consequence, the Court entered a final default judgment against the COA avoiding the Pre-Petition and Post-Petition Transfers and entering judgment against the COA in the amount of $120,000.[2] The COA subsequently retained counsel and moved to set aside the default judgment.

At the hearing on the COA's motion to set aside the default judgment, counsel for the Liquidating Trustee and the COA announced a resolution of the motion whereby the COA agreed to pay the Liquidating Trustee the sum of $30,000 in full satisfaction of the COA's liability under Bankruptcy Code section 550 (Count III). Importantly, the settlement did not affect the finality of the default judgment with respect to the avoidance of the Pre-Petition and Post-Petition Transfers under Bankruptcy Code sections 547 and 549 (Counts I and II). Thereafter, the Liquidating Trustee continued to prosecute this adversary proceeding against Greenacre under Bankruptcy Code section 550 seeking recovery of the avoided transfers Greenacre received as the COA's immediate transferee.

The focus of the parties' cross motions for summary judgment is on Greenacre's defense under Bankruptcy Code section 550(b)(1) that it took the avoided transfers it received from the COA in "good faith" and "without knowledge of the voidability of the transfer avoided."[3] In

---

[2] Adv. Doc. No. 57 at 2.
[3] 11 U.S.C. § 550(b)(1).

support of this defense, Greenacre filed an affidavit of its principal, Jeffrey L. Greenacre.[4] As set forth in the Greenacre Affidavit, Greenacre contracted with the COA on May 28, 2007 (9 months before the Debtor filed for bankruptcy), to provide property management and bookkeeping services for The Place. The contract was for twelve months with an automatic renewal option. The payment terms provided that the COA would pay Greenacre on a monthly basis following the month in which the COA provided the services. As set forth in the Greenacre Affidavit, Greenacre billed the COA every month for its services, and the COA paid Greenacre for the same invoices every month following the billing month. The parties continued this practice from the inception of the contract until the contract was terminated approximately seven months after the Debtor filed its Chapter 11 case. The Greenacre Affidavit concludes: "Greenacre Properties had no knowledge that the acceptance of payments in the ordinary course of business for services legitimately rendered under [the] contract could be avoided by the Court."[5]

In response to the Greenacre Affidavit, the Liquidating Trustee points to various excerpts from Mr. Greenacre's deposition that established that Greenacre knew that the Debtor was having financial difficulties. Specifically, the Greenacre Deposition establishes that (1) the Debtor had not made certain funding payments to the COA;[6] (2) the Debtor was improperly using unit-owner capital contributions for operational needs, resulting in deficits from "day one" of the contract between the COA and Greenacre;[7] (3) the COA's inability to timely meet its obligations was due to the Debtor's financial condition and inability to timely pay its obligations;[8] and (4) finally, the Debtor never fully funded its reserve account.[9]

---

[4] Adv. Doc. No. 46-1 ("Greenacre Affidavit").

[5] Adv. Doc. No. 46-1 at 3, ¶ 12.

[6] Adv. Doc. No. 63 ("Greenacre Deposition") at p. 42, ll. 22-25; p. 58, ll. 6-21.

[7] *Id.* at p. 59, ll. 1-25; p. 60, ll. 1-10; p. 71, ll. 8-15.

[8] *Id.* at p. 84, ll. 3-6, 24-25; p. 85, l. 1; p. 39, ll. 10-25; p. 40, ll. 1-25; p. 41, ll. 9-25 & p. 69, ll. 9-13.

[9] *Id.* at p. 86, ll. 9-16; p. 63, l. 25; p. 64, ll. 1-25 & p. 65, ll. 1-7.

4

Conclusions of Law

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. §§ 547, 549, and 550. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (F).

The Court has already determined in this adversary proceeding that the transfers to the COA (the initial transferee) are avoidable under Bankruptcy Code sections 547 and 549. The sole remaining issue before the Court is whether Greenacre is liable for the subsequent transfers the COA made to Greenacre (as the COA's immediate transferee). In this respect, Bankruptcy Code section 550 allows a trustee to recover from a transferee a transfer avoided under sections 547 and 549.[10]

While the *initial* transferee is absolutely liable under Bankruptcy Code section 550 for the value of the property transferred,[11] a trustee may not recover an avoidable transfer from any *immediate* transferee if the immediate transferee took the transfer (1) for value, (2) in good faith, and (3) without knowledge of the voidability of the transfers.[12] The immediate transferee bears the burden of proof on these issues.[13] There is no question that Greenacre (as the COA's immediate transferee) gave value to the COA in the form of property management services in exchange for the transfers it received. Section 550(b)(1) does not require that the value provided be given to the Debtor.[14] Accordingly, the focus of the Court's analysis will be on whether the undisputed record facts establish that Greenacre took the Pre-Petition and Post-Petition transfers in good faith and without knowledge of the voidability of the transfers.

---

[10] 11 U.S.C. § 550(a)(2).

[11] *Bauman v. Bliese (In re McCarn's Allstate)*, 326 B.R. 843, 853 (Bankr. M.D. Fla. 2005) (Williamson, J.).

[12] 11 U.S.C. § 550(b)(1).

[13] *Kendall v. Sorani (In re Richmond Produce Co.)*, 151 B.R. 1012, 1021 (Bankr. N.D. Cal. 1993) (citing *In re Nordic Village Inc.*, 915 F.2d 1049, 1055 (6th Cir. 1990)).

[14] *In re Richmond Produce*, 151 B.R. at 1021; *Colmark I LP v. Graubard, Mollen, Horowitz, Pomerantz & Shapiro (In re Colmark I LP)*, 189 B.R. 253, 257 (Bankr. D. Conn. 1995).

A.      Good Faith.

While the term "good faith" appears in numerous Bankruptcy Code provisions,[15] it is

nowhere defined in the Bankruptcy Code. Section 550(b)(1)'s legislative history, however, does

provide some guidance, suggesting Congress intended section 550(b) to prevent an initial

transferee from "washing" an avoidable transfer through an innocent third party:

> The phrase "good faith" in [§ 550(b)] is intended to prevent a
> transferee from whom the trustee could recover from transferring
> the recoverable property to an innocent transferee, and receiving a
> transfer from him, that is, "washing" the transaction through an
> innocent third party. In order for the transferee to be excepted from
> liability . . . he himself must be a good faith transferee.[16]

For example, an immediate transferee, then, does not take in "good faith" if the immediate

transferee knew or should have known that it was not trading normally, but rather that "the

purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors."[17]

Cases such as *Bonded Financial Services, Inc. v. European American Bank*[18] support the

proposition that the recipient of an avoidable transfer may lack good faith if the recipient

possessed enough knowledge of the events to induce a reasonable person to investigate whether

the debtor is transferring its assets outside the ordinary course of business.[19] The *Bonded*

*Financial Services* court cites as an example *Dokken v. Page*.[20] In *Dokken*, the court held that

"speculating purchasers from insolvent debtors should know that under the bankrupt act they

cannot stop their ears and shut their eyes lest they may hear or see that such a merchant . . . was

---

[15] 11 U.S.C. §§ 109(c)(5)(B), 363(m), 364(e), 542(c) & (d), 548(c), 549(c), 550(d)(1), 727(a)(9)(B)(ii), 746(a), 1113(b)(2), 1114(f)(2), 1125(e), 1126(e), 1129(a)(3), 1144(1).

[16] H.R. Rep. No. 95-595, at 376 (2d Sess. 1978); S. Rep. No. 95-989, at 90 (2d Sess. 1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5876, 6332.

[17] *Tavenner v. Smoot (In re Smoot)*, 265 B.R. 128, 140 (Bankr. E.D. Va. 1999).

[18] 838 F.2d 890 (7th Cir. 1988).

[19] *Id.* at 897-98.

[20] *Id.* (citing *Dokken v. Page*, 147 F. 438 (8th Cir. 1906)).

selling out his entire stock of goods in order to defeat his creditors in the collection of their just

claims."[21] The *Dokken* court, in turn, cites *Walbrun v. Babbitt*.[22] There, the court stated:

> But it is wholly a different thing when he sells his entire stock to
> one or more persons. This is an unusual occurrence, out of the
> ordinary mode of transacting such business, is prima facie
> evidence of fraud, and throws the burden of proof on the purchaser
> to sustain the validity of his purchase.[23]

This legislative history and historical case law authority leads the Court to the conclusion

that mere knowledge that the ultimate source of payment is experiencing financial difficulty does

not, without more, constitute lack of good faith.  Something more is required.  For instance, the

irregular nature of the transaction, as discussed above, or the insider status of the immediate

transferees may support a finding of lack of good faith.[24]

But that is not the case here.  Greenacre had a contract under which it was obligated to

provide management services to the COA. Greenacre provided such services in the ordinary

course of business and was paid no later than the month following the provision of such services.

The entire transaction between the COA and Greenacre was in the ordinary course of business.

Ironically, while the Court may consider the ordinary course nature of the transfers for

purposes of determining Greenacre's good faith, Greenacre does not have available to it the

statutory ordinary course of business defense otherwise available to initial transferees of

avoidable transfers.[25] It simply provided a necessary service to the COA and was paid

presumably a reasonable compensation for such services. Given the circumstances, the court

finds that Greenacre acted in good faith in all respects in providing property management and

bookkeeping services to the COA and receiving payment for those services from the COA.

---

[21] *Dokken*, 147 F. at 439.
[22] *Id.* at 440 (citing *Walbrun v. Babbitt*, 83 U.S. 577, 21 L. Ed. 489 (1872)).
[23] *Walbrun*, 83 U.S. at 581.
[24] *See, e.g., In re Smoot*, 265 B.R. at 140-141.
[25] 11 U.S.C. § 547(c)(2).

B.    Without Knowledge of the Voidability.

The final element that Greenacre must prove is that it was "without knowledge of the voidability of the transfer avoided."[26] While the Bankruptcy Code provides little guidance as to how courts should apply this term, the legislative history is helpful. In this respect, the Commission on Bankruptcy Laws of the United States noted that the term means that "the transferee knew facts that would lead a reasonable person to believe that the property [transferred] was recoverable."[27] Actual knowledge—rather than constructive notice—is required.[28] "While knowledge is stronger than notice, knowledge does not, however, require 'complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable.'"[29]

These concepts are relatively straightforward and easy to apply in the typical transactions involving sophisticated players such as banks and lawyers well-versed in bankruptcy and insolvency concepts. For example, in *Richmond Produce* the immediate transferee was a bank that had "extensive knowledge of the Debtor's financial condition as a result of negotiations leading to its offer of a line of credit."[30] In particular, the bank knew the details of the transaction in question and that the debtor's purchase would be heavily leveraged. The court in that case held that this was sufficient to put the bank on notice that the proposed transfer would render the debtor insolvent, resulting in the transfers being avoidable.[31]

---

[26] 11 U.S.C. § 550(b)(1).

[27] *CCED Asset Mgmt. v. Chemical Bank (In re Consol. Capital Equities Corp.)*, 175 B.R. 629, 637 (Bankr. N.D. Tex. 1994) (citing H.R. Doc. No. 93–137, at pt. II, § 4–609 n. 4 (1st Sess. 1973)).

[28] *In re Consol. Capital*, 175 B.R. at 638 (citing *Smith v. Mixon*, 788 F.2d 229, 232 (4th Cir.1986)).

[29] *Id.* (citing *Bonded Fin. Servs.*, 838 F.2d at 898).

[30] *In re Richmond Produce*, 151 B.R. at 1022.

[31] *Id.*

Likewise, in *Nordic Village*,[32] the court held that the Internal Revenue Service had knowledge of the voidability of a transfer when it received a cashier's check with the crossed through but still legible name of an entity other than the taxpayer on the remitter.[33] Similarly, in *Consolidated Capital*, the bank learned through monthly reports that the debtor was not performing according to expectations. The bank had a line of credit with the debtor and thus was monitoring the debtor's financial performance, including monitoring cash flow projections reflecting a declining net worth, increased leverage, and cash flow problems. The court held that the bank, a "sophisticated lending institution, . . . had access to information sufficient to support an inference of knowledge" of the voidability of the transfer.[34] And, finally, in *Southmore Corporation*, a New York law firm that received $1 million in fees from the initial transferee for representing a party in a proxy contest for control of the debtor was found to have knowledge of the voidability of that transfer.[35]

What distinguishes this case from those cited above is that unlike those cases, this case does not involve a sophisticated bank or law firm. Greenacre was simply an ordinary downstream vendor providing routine management services for the COA. This is a far cry from a bank or law firm that regularly deals with insolvency matters. The Court will take judicial notice that banks and sophisticated law firms that deal in complex commercial transactions are well aware of the potential voidability of certain types of transactions should bankruptcy ensue.

Even though Greenacre knew about the debtor's financial problems, there is no evidence—either directly supporting or from which it can be inferred—that Greenacre knew anything about the voidability of the payments it was receiving in the ordinary course of its

---

[32] 915 F.2d at 1055 n.3.

[33] *Id.*

[34] *In re Consol. Capital*, 175 B.R. at 639.

[35] *Southmark Corp. v. Schulte, Roth & Zabel, LLP*, 242 B.R. 330, 340-341 (N.D. Tex. 1999).

performance under its contract with the COA.  In fact, Mr. Greenacre's unrebutted affidavit provides: "Greenacre Properties had no knowledge that the acceptance of payments in the ordinary course of business for services legitimately rendered under [the] contract could be avoided by the Court."[36] After reviewing all of the surrounding circumstances based on the undisputed facts of record, the Court agrees. Greenacre has met its burden to establish that it had no knowledge of the voidability of the payments it received for the routine management services it provided to the COA in the months prior to and following the filing of the petition.

Conclusion

Based on the foregoing, the Court concludes that Greenacre took the transfers it received for value, in good faith, and without knowledge of their voidability. Accordingly, the Liquidating Trustee may not recover the value of the property transferred under Bankruptcy Code section 550(a)(2).[37] A separate order granting Defendant's Motion for Summary Judgment[38] and denying Trustee's Cross Motion for Summary Judgment[39] and Trustee's Supplemental Cross Motion for Summary Judgment[40] will be entered. Based thereon, the Court will then enter final judgment concluding this adversary proceeding in favor of Greenacre.

**DATED** in Chambers at Tampa, Florida, on _____April 15, 2011_____.

_____
Michael G. Williamson
United States Bankruptcy Judge

Copies to:
Counsel for Liquidating Trustee: David S. Jennis, Esq.
Counsel for Greenacre: Herbert R. Donica, Esq.

---

[36] Adv. Doc. No. 46-1 at 3, ¶ 12.
[37] 11 U.S.C. § 550(b)(1).
[38] Adv. Doc. No. 46.
[39] Adv. Doc. No. 53.
[40] Adv. Doc. No. 66.